# UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| In re: )<br>)<br>CURTIS PRICE BRYANT, JR., )<br>CYNTHIA JEANNE BRYANT, )<br>    *Debtors.* )<br>_____ ) | Case No. 05-71240-SCS<br><br>Chapter 13 |

## MEMORANDUM OPINION

This matter came on for hearing on June 1, 2006, upon the Application for Compensation ("Application") filed by Edward J. Sargent, Counsel for the Debtors in the above-captioned matter ("Sargent"). At the conclusion of the hearing, the Court took this matter under advisement. The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Upon consideration of the evidence and arguments presented by counsel at the hearing and the pleadings submitted, the Court makes the following findings of fact and conclusions of law.

### I. FINDINGS OF FACT

On March 9, 2005, Sargent filed a voluntary petition under Chapter 13 of the Bankruptcy Code for the above-named Debtors. On May 2, 2006, Sargent filed his Application for Compensation. In his Application, Sargent requests additional compensation in the amount of $4,969.06, itemized as $4,610.00 for fees and $359.06 for costs incurred. With regard to fees, Sargent seeks a total of $5,600.00 for his fees and $510.00 in fees for paralegal time. Sargent states that the Debtors paid him the sum of $1,500.00 plus the filing

fee of $194.00 at the beginning of his representation; thus, Sargent seeks approval of the remaining $4,610.00 in fees. He also seeks the reimbursement of costs incurred in the amount of $359.06.

As to Sargent's attorney fees, he asserts that he expended 32 hours, at an hourly rate of $175.00, on matters relating to the Debtors' case. He further asserts that his paralegal spent 6.8 hours working on matters relating to the Debtors' case. The hourly rate for Sargent's paralegal is $75.00. Sargent also represents that he incurred costs of $359.06 for copying costs and postage for various documents in relation to the Debtors' case.

In support of his request, Sargent states in the Application that after he filed the Debtors' petition, he filed a Motion for Extension on behalf of the Debtors for additional time to file the Chapter 13 Plan, schedules, and statements. He responded to a Notice to Show Cause and a Motion to Dismiss by the Chapter 13 Trustee, which were both resolved; and responded to a Motion for Relief from the Automatic Stay by the first mortgage holder, which was also resolved. Sargent states that he was also successful in his negotiations with the Debtors' second mortgage holder and in the process of seeking the Court's approval of the Debtors' decision to refinance their mortgages and pay their Chapter 13 plan in full.

On May 8, 2006, the Debtors filed with the Court a copy of a letter they sent to George W. Neal, the Chapter 13 Trustee in this matter, in which they objected to the Application. On May 25, 2006, the Debtors filed with the Court a copy of a second letter they sent to Mr. Neal, stating, among other things, that they wished to withdraw their

2

objection to the Application.

A hearing on the Application was held on June 1, 2006, at which Sargent and Mr. Neal appeared. Sargent stated that the Debtors' case was unusual to the extent that it was their second bankruptcy filing, and the husband-Debtor is self-employed, which raised additional issues concerning his income and expenses. Sargent further stated that he also encountered issues with real property appraisals and the amount of the claims on the real property following the Debtors' first bankruptcy filing. Sargent also represented that he expended time with regard to the Notice to Show Cause that was issued in the Debtors' case. In addition, Sargent stated that he spent several hours working on issues related to the Debtors' decision to refinance their real property. To this extent, he stated that both he and his paralegal spent several hours working on the Debtors' refinancing issue that are not reflected in the Application.

When asked by the Court about his time records, Sargent represented that, while he maintains contemporaneous time records, the typed documents attached to the Application, which depict the activities undertaken in the case and alleged time spent on such activities ("documents"), were not a copy of the hand-written time records he actually maintains for a case. He further stated that he keeps contemporaneous time records by recording the time spent on each task at the time the task is performed, as part of his hand-written notes which are maintained in the client file, along with copies of pleadings and other documents ("time records"). He also stated to the Court that his paralegal records her time in the same

fashion.[1] When preparing the Application, his paralegal entered the time from the time records onto the documents attached to the Application.[2] He then reviewed the documents for accuracy prior to filing the Application.

When questioned regarding the several hours he, and not his paralegal, spent making telephone calls to his client, Sargent responded that a great deal of additional information had to be obtained for the mortgage company regarding the refinancing of the real property. He also stated that the paralegal did in fact handle many of the telephone calls related to the case as a whole because she was quite familiar with the issues surrounding the Debtors' case.

Mr. Neal stated that he had reviewed the Application and had no objection to the amount sought by Sargent. He further stated that there were sufficient funds in the bankruptcy estate to pay the amount sought in the Application as well as 100% of the claims filed by the Debtors' creditors. To this extent, Sargent stated that excess proceeds would remain from the refinance after the claims and his additional attorney fees and costs (if approved) were paid, which the Debtors would receive at the conclusion of their case.

At the conclusion of the hearing, given Sargent's representation to the Court that the

---

[1] Sargent represented that he maintains such records in each of his cases, but the separate hand-written notes containing his actual time expended were not compiled or totaled unless he elected to file a supplemental fee application in a particular case.

[2] In this opinion, the term "document" will be used to refer to the document attached to the Application in which Sargent listed the date, task, and time spent for each task for himself and his paralegal. The term "time records" will be used to refer to those records, consisting of hand-written notes maintained in the Debtors' file, submitted by Sargent in response to the Court's request at the conclusion of the June 1, 2006, hearing.

documents attached to the Application were not actual and literal copies of his time records, the Court ordered Sargent to submit copies of his actual contemporaneous time records to the Court within ten days. Such records were timely submitted for the entire time period of Sargent's representation of the Debtors.

## II. CONCLUSIONS OF LAW

As this Court has recently discussed in great detail, courts have overwhelmingly held that bankruptcy courts have a duty to review supplemental fee applications.[3] *In re Vernon-Williams*, Case No. 04-37223, --- B.R. —, 2006 WL 1589743, at *13 (Bankr. E.D. Va. Apr. 27, 2006) (citing *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 841 (3d Cir. 1994); *In re Roman*, Case No. 05-31472, 2005 WL 3736305, at *1 (Bankr. E.D. Va. June 27, 2005); *In re Harris*, Case No. 96-36765, 1998 WL 408896, at *1 (Bankr. E.D. Va. Apr. 14, 1998); and *In re Great Sweats, Inc.*, 113 B.R. 240, 242 (Bankr. E.D. Va. 1990)). Additionally, courts must take great care in scrutinizing supplemental fee applications, "since every dollar received by the applicant results in one dollar less for the creditors . . . ." *Cont'l Ill. Nat'l Bank & Trust Co. v. Wooten (In re Evangeline Refining Co.)*, 890 F.2d 1312, 1326 (5th Cir.

---

[3] As this Court recently stated, it is customary for attorneys in this district to charge an initial flat fee for representing a debtor in a Chapter 13 case. *In re Vernon-Williams*, Case No. 04-37223, --- B.R. ---, 2006 WL 1589743, at *14 (Bankr. E.D. Va. Apr. 27, 2006) (citing *In re Harris*, Case No. 96-36765, 1998 WL 408896, at *1 (Bankr. E.D. Va. Apr. 14, 1998)). Pursuant to Local Bankruptcy Rule 2016-1, the Court routinely approves requests for attorney fees of $1,500.00 or less without a hearing; this fee is customarily referred to as the "no-look" fee. *Id.* Those fees sought in addition to those received as part of the "no-look fee" must be requested by way of a detailed supplemental fee application. *See id.* In the instant case, Sargent is seeking compensation in addition to the $1,500.00 he received from the Debtors at the beginning of his representation.

5

1989) (citing *In re Hotel Assocs.*, 15 B.R. 487, 488 (Bankr. E.D. Pa. 1981)); *In re Szymczak*, 246 B.R. 774, 778 (Bankr. D.N.J. 2000) (quoting *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d at 844) (discussing that the court's obligation to examine fee applications derives from the need to "protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors"); *see also In re Courtois*, 222 B.R. 491, 494 (Bankr. D. Md. 1998) (quoting *In re Yates*, 217 B.R. 296, 300 (Bankr. N.D. Okla. 1998)) (finding that "such duty to independently review professional fee applications in Chapter 13 cases becomes a particularly important supervisory function of the court when 'neither the debtors nor most creditors have an incentive to object to attorney's fees'"). Furthermore, the determination of what is reasonable compensation is within the sound discretion of the bankruptcy court. *In re Breeden*, 180 B.R. 802, 808 (Bankr. N.D. W. Va. 1995) (citing *In re AOV Indus., Inc.*, 43 B.R. 468 (D.D.C. 1984)) ("The determination as to what constitutes reasonable compensation for actual, necessary expenses for the purposes of reimbursement under these various Code sections is within the sound discretion of the Court."); *In re Bernard Hill, Inc.*, 133 B.R. 61, 69 (Bankr. D. Md. 1991). The burden of proof is always borne by the applicant in a fee application case. *In re Maxine's Inc.*, 304 B.R. 245, 249 (Bankr. D. Md. 2003); *In re Computer Learning Ctrs.*, 272 B.R. 897, 908 (Bankr. E.D. Va. 2001). To this extent, counsel must file an application that contains sufficient documentation regarding the amount of time spent and the type of work performed. *In re Howell*, 226 B.R. 279, 281 (Bankr. M.D. Fla. 1998) (citing *Am. Benefit Life Ins. Co. v.*

*Baddock* (*In re First Colonial Corp. of Am.*), 544 F.2d 1291, 1299 (5th Cir. 1977)).

When counsel seeks an award of supplemental fees, the Court must engage in a step by step process of evaluating the supplemental fees requested. First, the Court must determine whether counsel has kept accurate and contemporaneous time records. *In re Binns*, Case No. 05-32844, Memorandum Opinion & Order, at 2 (Bankr. E.D. Va. Apr. 28, 2006) (unpublished) (Chief Judge Tice did not begin to analyze the supplemental fee request until first noting that "counsel has included his time records with the application, and the court accepts these as reflecting services performed."). If counsel cannot provide the Court with accurate and contemporaneous time records, regardless of the reasonableness of the request, the Court must deny the request for supplemental fees because "actual time records are a requirement when submitting supplemental fee applications." *In re Vernon-Williams*, Case No. 04-37223, --- B.R. ---, 2006 WL 1589743, at *21-22 (Bankr. E.D. Va. Apr. 27, 2006) (citing numerous Chapter 13 supplemental fee cases where the supplemental fees requested were denied on the grounds that counsel was unable to submit contemporaneous time records); *In re Grossman*, Case No. 04-13296, 2006 Bankr. LEXIS 357, at *9, fn.10 (Bankr. E.D. Va. Feb. 15, 2006) ("[T]he practice in this district is to require attorneys who seek compensation beyond the flat fee amount to provide time records for the entire case."); *In re Keatts*, Case No. 03-41428, 2005 Bankr. LEXIS 2917, at *3 (Bankr. E.D. Va. Mar. 31, 2005) (supplemental fee applications filed by law firm of Chaplin, Papa & Gonet denied on the basis that time entries were estimates, and providing that "[t]he court cannot consider the

value of the attorney's services when the attorney does not present the court with a statement of the actual services [it] has rendered"); *In re Carter*, Case No. 02-67413, Memorandum Opinion & Order, at 6 (Bankr. E.D. Va. Mar. 31, 2003) (unpublished) (holding that supplemental fee applications must include actual time records); *see also In re Harris*, Case No. 96-36765, 1998 WL 408896, at *2 (Bankr. E.D. Va. Apr. 14, 1998) (providing that "[e]ven though the attorney initially charges a flat fee for services leading to the filing of a chapter 13 petition, all attorneys are expected to maintain time records of *all* services if they ever anticipate requesting the court to approve additional charges"); *In re C & J Oil Co.*, 81 B.R. 398, 403 (Bankr. W.D. Va. 1987) (discussing fees in a Chapter 11 case and noting that "as indicated by Bankruptcy Rule 2016, it is necessary that counsel keep contemporaneous time records of services rendered . . . .").

If counsel does not keep contemporaneous time, then counsel cannot meet its burden regarding the fees requested, and therefore, the Court must deny the supplemental fees requested. *In re Vernon-Williams*, --- B.R. ---, 2006 WL 1589743, at *21. However, if counsel submits contemporaneous time records, that does not end the Court's inquiry regarding the supplemental fees requested. Rather, if counsel has contemporaneous time records, the Court then engages in the second step of evaluating the supplemental fee application to determine the reasonableness of the request in light of numerous factors, including but not limited to, examining the time entries on the fee applications, whether the services provided to the debtor were routine or non-routine, whether the tasks were clerical,

and whether counsel has engaged in billing judgment. Essentially, this second step of evaluating the supplemental fee request requires the Court to determine whether counsel has demonstrated that the totality of the fees requested are in fact reasonable. *In re Binns*, Case No. 05-32844, Memorandum Opinion & Order, at 3 (Bankr. E.D. Va. Apr. 28, 2006) (unpublished); *see also In re Harris*, 1998 WL 408896, at *2.

Section 330 of the Bankruptcy Code provides that "[i]n determining the amount of reasonable compensation to be awarded the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors . . . ." 11 U.S.C § 330(a)(3).[4] These factors include:

(A)  time spent on such services;
(B)  the rates charged for such services;
(C)  whether the services were necessary to the administration of . . . a case under this title;
(D)  whether the services were performed within a reasonable amount of time . . . ; and
(E)  whether the compensation is reasonable based on the customary compensation charged . . . .

*Id.* § 330(a)(3)(A)–(E).

Furthermore, in the Fourth Circuit, attorney fees are evaluated using the *Barber* factors as well as the lodestar method. There is some debate over which test is superior; however, the Fourth Circuit appears to use a "hybrid" of the *Barber* factors and lodestar

---

[4] The citations and quotations in this Memorandum Opinion to Title 11 of the United States Code are to those sections in effect at the time the underlying bankruptcy case was filed, not to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which took effect October 17, 2005. Furthermore, the citations and quotations in this Memorandum Opinion to the Local Bankruptcy Rules are also to those sections in effect at the time the case was filed.

method. *See, e.g., Equal Employment Opportunity Comm'n v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990); *In re Great Sweats, Inc.*, 113 B.R. 240, 241 (Bankr. E.D. Va. 1990). In *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), *cert. denied*, 439 U.S. 934 (1978), the Fourth Circuit Court of Appeals held that courts must consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), when determining the reasonableness of the fees requested. These twelve factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber*, 577 F.2d at 226 n.28. Applying these factors, attorneys' fees are to be evaluated by the lodestar method. "[T]he product of reasonable hours and a reasonable rate constitutes the lodestar [method]." *In re Harris*, Case No. 96-36765, 1998 WL 408896, at *3 (Bankr. E.D. Va. Apr. 14, 1998); *see also Serv. News Co.*, 898 F.2d at 965 (citing *Daly v. Hill*, 790 F.2d 1071 (4th Cir. 1986), and *Blum v. Stenson*, 465 U.S. 886, 888 (1984)) (stating that "these [*Barber*] factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee").

In the present case, counsel has provided the Court with time records as requested, and

the Court is satisfied that the time records supplied are indeed contemporaneous time records. *See In re Harris*, 1998 WL 408896, at *2 (discussing that attorneys must maintain time records for all services when supplemental fees are sought to enable the court in determining whether the total fee sought is reasonable, rather than just whether the supplemental fee reasonable). With the exception of certain time entries discussed below,[5] it appears to the Court that Sargent and his paralegal recorded time as the distinct tasks associated with the instant case were completed. *See In re Vernon-Williams*, Case No. 04-37223, --- B.R. ---, 2006 WL 1589743, at *17 (Bankr. E.D. Va. Apr. 27, 2006) (quoting The Am. Heritage Dictionary (1982)) (noting that the term "contemporaneous" denotes a matter that "originat[es], exist[s], or happen[s] during the same time period"). With regard to several of the time entries, a beginning time and an ending time are listed, along with the time expended, in tenths of an hour, further substantiating that the time records were contemporaneously kept. Furthermore, none of the time entries appear to the Court to be redundant or unnecessary. Therefore, given that contemporaneous time records exist, the next line of inquiry is to determine the reasonableness of the request. As to the applicant's hourly rate, the Court finds that the hourly rate of $175.00 is certainly reasonable given the experience, reputation, and ability exhibited by Sargent and the results he obtained in the Debtors' bankruptcy case. The hourly rate is also within the acceptable range for similarly-

---

[5] Despite this finding, however, the Court addresses below the reduction in fees sought in the Application for lack of time entries for certain tasks and conflicting time entries between the documents attached to the Application and actual time records for other tasks. *See infra* page 13-18.

11

situated practitioners that regularly appear before this Court.

The Court notes from its review of the Application that, at an hourly rate of $175.00, the initial $1,500.00 paid by the Debtors prior to the filing of the petition would have been expended after approximately 8.5 hours of attorney time. Thus, this initial fee would have been expended by the end of April, 2005, approximately seven weeks after the case was filed. The Section 341 Meeting of Creditors was conducted on April 27, 2006. In a recent opinion, Chief Judge Tice stated:

> Ordinarily, the basic fee charged for debtor representation in a chapter 13 bankruptcy should cover services such as "interviews with the client, contacting creditors . . . and verifying other information for the statements and schedules, preparation of [the] petition, schedules and a confirmable plan, attendance at the Section 341 meeting of creditors, and . . . attendance to other more routine matters encountered in the case." Thus, the basic fee charged for legal services should encompass all reasonably predictable services by the attorney and may include plan modification and amendments of schedules.

*In re Binns*, Case No. 05-32844, Memorandum Opinion & Order, at 2 (Bankr. E.D. Va. Apr. 28, 2006) (unpublished) (citing *In re Harris*, 1998 WL 408896, at *1). Chief Judge Tice went on to state that legal services related to matters such as a motion for relief from stay and objections to confirmation may warrant an award of additional compensation in addition to the "no-look" fee if reasonable in the context of the case. In certain circumstances, plan modification may also be considered to be "non-routine" if the circumstances necessitating the modification were not those that could have been reasonably anticipated by the attorney. *Id.* at 2-3.

Upon review of the Application and time records, Sargent certainly appears to have

diligently pursued the Debtors' case for them. The representations in the Application as well as Sargent's statements at the hearing held on June 1, 2006, convince the Court that the Debtors in the instant matter faced several unique issues that required Sargent to expend an appreciable amount of time in excess of that typically required in a Chapter 13 case prior to the Section 341 Meeting of Creditors and thereafter. Those representations and statements are corroborated by the information contained in Sargent's time records, as well as by the Court's review of the docket in this case.[6] The Debtors had previously filed bankruptcy, which required Sargent to outline the options available to them given this circumstance. Sargent represented that the husband-Debtor is self-employed, which necessitated additional effort to ensure that the husband's income and expenses were correct in the pleadings filed. The record also confirms that Sargent spent several hours both before and after the conduction of the Section 341 Meeting of Creditors on issues related to the first and second mortgages, including seeking Court approval on behalf of the Debtors for the refinancing of those mortgages. To this extent, Sargent stated that he encountered problems determining the correct amounts for the mortgage claims in light of the Debtors' previous bankruptcy. This Court finds that, in the context of the instant case, the fees sought for the additional services rendered to the Debtors by Sargent are reasonable.

Even though the Court has found that Sargent's time records do appear to be contemporaneously kept, the Court has found several entries on the documents submitted as

---

[6] As the Court previously noted, the Chapter 13 Trustee did not object to the fees sought in the Application. *See supra* page 4.

an attachment to the Application for which corresponding entries cannot be located within the time records submitted by Sargent to the Court following the hearing. There are no additional records, statements, or other supporting evidence that would convince the Court that the time submitted for these particular entries was recorded contemporaneously.[7] Thus, without contemporaneously recorded time, the Court must reduce the amount of the fees sought as outlined below. Within the time records submitted by Sargent, the Court is unable to locate and review entries which correspond to the entries on the documents submitted with the Application for the following tasks:

| Date | Task | Time Listed on Documents |
| --- | --- | --- |
| 3/1/2005 | Letter to Option One re: arrearage | 0.1 hours |
| 3/9/2005 | Conf. w/ C. Bryant to sign minimum requirements; File Petition | 0.3 |
| 3/27/2005 | TC w/ C. Bryant; Review file | 0.4 |
| 9/28/2005 | Review message from L. Morrissette re: Estelle Monzell Willett | 0.1 |
| 3/10/2006 | Review First Notice of Default and Notice of Termination of Automatic Stay re: Option One Mortgage Corp. | 0.1 |
| 4/6/2006 | Fax Order Allowing Debt to People's Choice | |

---

[7] To be sure, Sargent attached, to the time records submitted following the hearing, five documents, including what appears to be a facsimile transmission to Option One Mortgage Corporation, dated March 2, 2005; a copy of a receipt issued by the Court upon the filing of the Debtors' petition, dated March 9, 2005; what appears to be a copy of a telephone message, dated September 29, 2005; what appears to be a facsimile transmission to People's Choice Lending, dated April 6, 2006; and a document entitled "First Notice of Default and Notice of Termination of Automatic Stay" (which contains no discernible date). The Court can suppose that these documents were perhaps submitted to substantiate certain time entries that were incomplete or non-existent; however, the Court cannot award fees based upon suppositions. The Court can only award fees for services for which contemporaneous, accurate, and reliable time records exist. *See In re Vernon-Williams*, --- B.R. ---, 2006 WL 1589743, at *21.

      Lending        0.1

Thus, the Court will reduce the fee sought by Sargent by $192.50 (1.1 hours X $175.00/hour) for lack of corresponding entries in the time records for these tasks.

Similarly, the Court is unable to locate entries in the time records which correspond to the entries on the documents submitted with the Application for the following tasks allegedly completed by the paralegal:

| Date | Task | Time Listed on Documents |
|---|---|---|
| 3/2/2005 | Draft request for information re: mortgage; Conf. w/ Cynthia Bryant re: sign authorization to release information | 0.1 hours |
| 3/2/2005 | Fax request for information re: mortgage to H. Bierman's office | 0.1 |

Thus, the Court will reduce the fee sought by Sargent for his paralegal's services by $15.00 (0.2 hours X $75.00/hour).

In several additional instances, a task entry on the documents attached to the Application can be matched to a task entry on the time records, but the times listed on the two documents are not identical. Similarly, there are instances where the tasks can be matched, but there is no time amount listed on the time records. In the former instances, the Court finds that because there is documented time within the contemporaneous time records, it is appropriate to award compensation in the amount of the lesser of the two time measures. In the latter instances, the Court must deny the time requested for lack of contemporaneous time records.

| Date | Task | Time Listed on Documents | Time Listed on Time Records |
|---|---|---|---|
| 2/7/2005 | TC to C. Bryant | 0.1 hours | None |
| 3/7/2005 | TC w/ Cynthia Bryant; Review information from client | 0.9 | 0.4 |
| 4/18/2005 | TC to Bryants; Review Schedules; Review information re: mortgage payments, real estate taxes and income tax debt; TC w/ C. Bryant; Plan calculations and drafting; TC w/ C. Bryant re: business expenses | 3.3 | 0.8, plus various times that perhaps to indicate the time that certain tasks started and ended, but no exact total is provided. |
| 4/19/2005 | Preparation of liquidation analysis | 0.2 | None |
| 5/18/2005 | Review file re: information to Trustee; letter to Trustee | 0.2 | None |
| 9/29/2005 | TC to L. Morrissette | 0.1 | None |
| 2/15/2006 | Review signed authorization from Global Mortgage; Review financial records, etc. | 0.2 | None |
| 4/4/2006 | TC to Casey @ G. Neal's office | 0.1 | None |

Regarding this subset of tasks, Sargent sought $892.50 (5.1 hours X $175.00/hour) per the time set forth on the documents for these entries; however, the time records provided contain contemporaneously record time for only 1.2 hours (or $210.00) of these services. Thus, the

Court will reduce the fee sought by Sargent by $682.50 (3.9 hours X $175.00/hour).

Likewise, the Court has found that the March 2, 2005, entry by the paralegal ("TC to H. Bierman's office (attorney for Option One Mortgage Corp.)") of 0.1 hours as well as the time entries for the paralegal's tasks from and including September 22, 2005, through and including April 25, 2006, can be matched between the documents attached to the Application and the time records, but there is no time amount listed on the time records for any of these tasks. These time entries comprise the majority of the paralegal's time entries and thus will not be repeated here. The Court calculates a total time for the time entries for September 22, 2005, through and including April 25, 2006, of 2.9 hours. Therefore, the Court must deny the time requested for the paralegal's services for these tasks for lack of contemporaneous time records. Thus, the Court will reduce the fee sought by Sargent for his paralegal's services by $225.00 (3.0 hours X $75.00/hour).

Therefore, the Court finds that the fees sought by Sargent should be reduced in the amount of $875.00, and that the fees sought in relation to the paralegal's services should be reduced in the amount of $240.00, resulting in a total reduction of the fees requested of $1,115.00.

As the Court has previously stated, the Court finds that Sargent's hourly rate of $175.00 is reasonable. Thus, the Court must now determine if the fee sought (less the amounts subtracted as outlined above) is reasonable in light of the *Barber* factors and the lodestar method. In addition, in determining whether fees requested are reasonable, the

Court is mindful that, among other things, it must determine whether the services provided were clerical in nature and therefore should be consumed in overheard, whether the services provided were unnecessary or duplicative, whether the time spent on any one task is unreasonable, whether counsel provides enough detail of the tasks completed to reveal the substance of the activity performed, along with the novelty and difficulty of the case. In this case, after examining the records and considering the aforementioned factors, along with Section 330 of the Bankruptcy Code, and the *Barber* factors in conjunction with the lodestar method, the Court finds in the instant case that Sargent has met his burden of proof that the fees sought in the Application, which are supported by actual contemporaneous records, are reasonable. Thus, the Court finds that it is appropriate to approve the fees sought by Sargent in the amount of $3,495.00, and to deny the remainder of the fees for the reasons stated above.

In the Application, Sargent also seeks $359.06 for costs incurred. Section 330 provides that an attorney may be reimbursed for "actual, necessary expenses." 11 U.S.C. § 330(a)(1)(B). As with records supporting additional compensation, records submitted in support of costs incurred must be reliable and specific. *See In re S.T.N. Enters.*, 70 B.R. 823, 834 (Bankr. D. Vt. 1987) (providing "[w]e shall refuse compensation or reimbursement when the supporting records are unreliable or lack specificity"). Furthermore, costs requested must be only for those which are actually incurred. *In re Williams*, 102 B.R. 197, 199 (Bankr. N.D. Cal. 1989) (discussing a compensation request from the trustee and holding "[a]s a

matter of law, the Court finds that an expense is not 'actual,' and therefore not reimbursable under section 330(a)(2), to the extent that it is based on any sort of guesswork, formula, or pro rata allocation"); *In re Marsh*, 14 B.R. 615, 617 (Bankr. E.D. Va. 1981) (discussing a report of the trustee for compensation and stating that "expenses must be actual, not estimates").

In the instant matter, the costs, which consist of copying costs and postage costs, requested by Sargent meet the criteria of being actual and specific. For each entry related to copying, the documents submitted as an attachment to the Application clearly and specifically sets forth the date on which the copies were made; the document that was copied; the per page amount for copies; the number of copies made; and the total cost for copying that document. The same information is clearly and specifically provided with regard to postage costs: the date of mailing; the document that was mailed; the cost for mailing each document; the number of mailings; and the total cost for mailing that document. The Court finds that the expenses are those that were actually incurred by Sargent and are not based upon estimates or any other type of formula. Finally, the Court finds that the expenses were reasonable and necessary in the instant matter. Therefore, the Court finds that Sargent is entitled to reimbursement of costs in the amount of $359.06.

Accordingly, the Court concludes that the Application for Compensation should be approved in the amount of $3,495.00 for fees and in the amount of $359.06 for reimbursement of costs incurred, for a total award of $3,854.06. The Court further concludes

that the remaining compensation requested should be denied.

A separate order will issue.

The Clerk shall deliver copies of this Order to Edward J. Sargent, Counsel for the Debtors; Curtis Price Bryant, Jr., and Cynthia Jeanne Bryant, Debtors; George W. Neal, Chapter 13 Trustee; and to the Office of the United States Trustee.

**Entered: July 18, 2006, at Norfolk, Virginia.**

STEPHEN C. ST. JOHN
United States Bankruptcy Judge

NOTICE OF JUDGMENT OR ORDER
Entered on docket
JUL 18 2006